UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID PALAMARYUK, by and through his parent and next friend, AVRAM PALAMARYUK,<br><br>               Plaintiff,<br><br>   v.<br><br>ELAINE DUKE, et al.,<br><br>               Defendants. | Case No. C17-441-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Plaintiff David Palamaryuk is a lawful permanent resident who is currently detained at the Northwest Detention Center in Tacoma, Washington, pending resolution of his removal proceedings. Through counsel, he brings this action under the Rehabilitation Act, the Administrative Procedures Act ("APA"), and the Fifth Amendment Due Process Clause to prohibit defendants[1] from transferring him to a detention facility outside of this judicial district. Plaintiff's interests are represented in this litigation through his parent and next friend, Avram Palamaryuk. Dkt. 14 at ¶ 2.

---

[1] Defendants are the Acting Secretary of Homeland Security, the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and the Acting Field Office Director of ICE's Seattle Field Office.

REPORT AND RECOMMENDATION - 1

Currently before the Court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 21. Plaintiff opposes the motion. Dkt. 25. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that defendants' motion to dismiss be GRANTED in part and DENIED in part, as explained below.

## II.     BACKGROUND

Unless otherwise noted, the following factual allegations are taken from plaintiff's amended complaint. Plaintiff is a native of the U.S.S.R. and a citizen of Ukraine who came to the United States as a refugee in 1995 when he was six years old. Dkt. 14 at ¶ 2. Shortly thereafter, he became a lawful permanent resident. *Id.*

Plaintiff was the victim of two serious assaults, one in 2009 and a second in 2013, which resulted in head injuries. *Id.* at ¶¶ 11-13. Following the second assault, he started to experience short-term memory loss, such as difficulty recalling the details of recent events, and cognitive impairments, such as difficulty with reading comprehension and occasional difficulty understanding spoken speech. *Id.* at ¶ 13.

In March 2016, ICE officials arrested plaintiff, detained him at the Northwest Detention Center, and placed him in removal proceedings. *Id.* at ¶ 2. He proceeded *pro se*, and following a merits hearing on October 3-4, 2016, the immigration judge denied his request for asylum-related protections and ordered him removed. *Id.* at ¶ 9.

On October 10, 2016, plaintiff hired attorney Minda Thorward to appeal the removal order to the Board of Immigration Appeals ("BIA") and to help him pursue other immigration-related relief. *Id.* at ¶ 14. Through Ms. Thorward, plaintiff filed an appeal with the BIA, requesting a remand because he demonstrated indicia of incompetency during his first merits

REPORT AND RECOMMENDATION - 2

hearing before the immigration judge. *Id.* at ¶ 18. Ms. Thorward met with plaintiff in person numerous times to work on his case. *Id.* at ¶ 19.

On March 13, 2017, while plaintiff's BIA appeal was pending, defendants issued a "Detainee Transfer Notification," informing plaintiff that he would be moved to a detention facility in Alabama. *Id.* at ¶ 21. At Ms. Thorward's request, defendants delayed plaintiff's transfer for one week to permit him to meet with his mother. *Id.* at 23. On March 17, 2017, Ms. Thorward made an in-person oral request to Jack Lippard, ICE Supervisory Detention & Removal Officer, that plaintiff be permitted to remain at the Northwest Detention Center because it would make representing him very difficult if he were moved to Alabama. *Id.* at 24.

On Sunday, March 19, 2017, Ms. Thorward sent a letter via email and fax, asking for confirmation from defendants that they would not transfer plaintiff as scheduled on Monday, March 20, 2017, and asserting that moving him would interfere with their ongoing attorney-client relationship and would impact his rights under the Rehabilitation Act due to his disability.[2] *Id.* at ¶ 25. On the morning of Monday, March 20, 2017, plaintiff was advised by defendants that he would be transferred to Alabama later that day. *Id.* at ¶ 26.

At approximately 6:00 p.m. on March 20, 2017, plaintiff filed his original complaint and an ex parte motion for a temporary restraining order ("TRO") prohibiting his transfer out of this judicial district. Dkt. 1. Ms. Thorward and plaintiff submitted declarations attesting that plaintiff requires in-person meetings with his attorney for him to effectively understand her. Dkt. 3 at ¶¶ 18-19; Dkt. 4 at ¶¶ 6-8; *see also* Dkt. 14 at ¶¶ 19-20, 22, 29. That evening, the Honorable James L. Robart granted a TRO and enjoined plaintiff's transfer for 14 days. Dkt. 6; *see also* Dkt. 7 (Amended Order Granting TRO).

---

[2] The copy of the letter that Ms. Thorward submitted along with the original complaint indicates that she emailed the letter at 10:49 p.m. Dkt. 4-6 at 4.

REPORT AND RECOMMENDATION - 3

On March 23, 2017, the government filed a motion with the BIA to remand the removal proceedings to the immigration judge, and the BIA remanded plaintiff's case for a competency evaluation. Dkt. 14 at ¶ 27. On April 18, 2017, Dr. Ivan Molton, a licensed psychologist specializing in psychology and traumatic brain injury and a professor of rehabilitation medicine at the University of Washington, performed a traumatic brain injury assessment and neuropsychological evaluation of plaintiff. *Id.* at ¶ 28. His report revealed significant cognitive impairment. *Id.* With regard to immigration proceedings, Dr. Molton stated that plaintiff "does not have the mental competency to participate . . . without safeguards." *Id.* at ¶ 29. Dr. Molton recommended that plaintiff meet with his attorney in person. *Id.* On June 5, 2017, the immigration judge held a competency hearing and found that plaintiff was incompetent but could proceed with safeguards. *Id.* at ¶ 30.

After the TRO expired in these proceedings, plaintiff did not seek a preliminary injunction. His counsel filed a status report informing the Court that defendants notified Ms. Thorward by telephone that they are no longer seeking to transfer him out of this district at the present time. Dkt. 8 at 2. Counsel argued, however, that the government's voluntary cessation did not render the matter moot. *Id.*

On June 19, 2017, plaintiff filed an amended complaint, which alleges that defendants violated his rights under the Rehabilitation Act, the APA, and the Due Process Clause, and seeks an order prohibiting defendants from transferring him outside of this judicial district. Dkt. 14. On November 7, 2017, after several extensions of time, defendants filed the motion to dismiss that is currently before the Court. Dkt. 21. Plaintiff filed his response on December 11, 2017. Dkts. 23-25. Defendants filed their reply on December 15, 2017.

REPORT AND RECOMMENDATION - 4

III.     DISCUSSION

Defendants argue that plaintiff fails to state a viable Rehabilitation Act claim, the Court does not have jurisdiction over his APA and Due Process Clause claims, and even if the Court does have jurisdiction, plaintiff fails to state a claim upon which relief may be granted.  Dkt. 21. As discussed below, the Court concludes that plaintiff should be permitted to proceed with his Rehabilitation Act and Due Process claims, but his APA claim should be dismissed.

A.     Legal Standards for Dismissal Under Rules 12(b)(6) and 12(b)(1)

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  The Court will grant a motion to dismiss where the complaint lacks a cognizable legal theory or alleges insufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction is either facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendants here mount a facial attack, in which "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The

Court accepts the factual allegations in the complaint as true, and the nonmoving party is entitled to have those facts construed in the light most favorable to it. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). The party asserting a claim in federal court bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

B.    <u>Plaintiff States a Rehabilitation Act Claim</u>

Plaintiff claims that defendants violated the Rehabilitation Act when they attempted to transfer him to a facility outside of the Seattle area. Dkt. 14 at ¶¶ 37-42. The Rehabilitation Act prohibits federal agencies from discriminating against people with disabilities. Section 504 of the Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a). A plaintiff bringing an action against a federal agency under § 504 must allege (1) he is a qualified individual with a disability, and (2) he was denied "a reasonable accommodation that [he] needs in order to enjoy meaningful access to the benefits of public services." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (citing *Alexander v. Choate*, 469 U.S. 287, 301-02 & n. 21 (1985)); *see also A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). The Ninth Circuit has explained that the second prong may be satisfied by alleging: (a) the plaintiff needed a specific accommodation to enjoy meaningful access to benefits, (b) the defendant was on notice that the plaintiff needed the accommodation but did not provide it, and (c) the specific accommodation was reasonable and available. *Mark H.*, 620 F.3d at 1088.

REPORT AND RECOMMENDATION - 6

Defendants do not challenge plaintiff's claim that he is a qualified individual with a disability; they attack only the sufficiency of his allegations under the second prong. They argue that plaintiff cannot show that he would be denied meaningful access to ICE's programs if he were transferred. Dkt. 21 at 9. Defendants recognize that plaintiff has a right to counsel in his removal proceedings, but they contend "he does not have a right to a *specific* attorney."[3] *Id.* (emphasis in original). Defendants further contend that even if plaintiff were transferred, his current counsel could continue to represent him and could continue to meet with him in person if desired. *Id.* Alternatively, defendants posit that plaintiff could obtain new counsel who could meet with him in-person more easily. *Id.* Defendants also maintain that now plaintiff's father has been appointed his guardian, his father could facilitate communications between him and Ms. Thorward, meet in person with Ms. Thorward, or even appear on his behalf in his removal proceedings. *Id.*

Defendants argue further that plaintiff cannot establish that they were on notice that he required an accommodation but failed to provide it. *Id.* According to defendants, "It was only on the eve of the transfer, late on a Sunday night, that plaintiff's counsel requested an accommodation for the first time. Plaintiff's counsel then filed a motion for a TRO mere hours after this belated 'notice,' tying defendants' hands and hindering any opportunity for defendants to consider and respond to the request." *Id.* at 10. Defendants thus maintain that plaintiff did not provide reasonable notice. *Id.*

Finally, defendants argue that plaintiff has not shown that they denied him an accommodation. *Id.* They point out that he admits they have told him they have no plans to

---

[3] In their reply, defendants clarify that they "dispute whether 8 U.S.C. § 1362 also guarantees plaintiff (or the thousands of other immigration detainees) the right to remain at the same detention facility when represented by counsel." Dkt. 26 at 2.

REPORT AND RECOMMENDATION - 7

1  transfer him. *Id.* Defendants contend that plaintiff cannot establish that it is reasonable to
2  preclude the government from transferring him to another facility at any time, for any reason,
3  even if, for example, he chooses new counsel or his alleged health situation changes. *Id.*
4      The Court is not persuaded by defendants' arguments. Plaintiff sufficiently alleges that
5  he needs an accommodation to enjoy meaningful access to benefits by alleging that his disability
6  requires face-to-face meetings with his attorney. Dkt. 14 at ¶¶ 10-13, 19-20, 29. By statute, he
7  is entitled to be represented by the counsel of his choice. 8 U.S.C. § 1362 ("In any removal
8  proceedings before an immigration judge and in any appeal proceedings before the Attorney
9  General from any such removal proceedings, the person concerned shall have the privilege of
10 being represented (at no expense to the Government) by such counsel . . . as he shall choose.").
11 Defendants challenge plaintiff's factual allegations by arguing that he could work with his
12 counsel remotely, continue to meet with her in person, obtain new counsel, or rely on his
13 guardian. But on a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of
14 plaintiff's allegations and view the complaint in his favor.
15     Plaintiff also sufficiently alleges that he put defendants on notice that he needed an
16 accommodation but they did not provide it. The allegations, when viewed in plaintiff's favor,
17 suggest that defendants received the March 19, 2017 letter with sufficient time to decide to halt
18 plaintiff's March 20, 2017 transfer so that his claims could be investigated, but they instead
19 informed plaintiff that his transfer would go through. Dkt. 14 at ¶¶ 25-26. The allegations in the
20 complaint suggest that if plaintiff had not obtained a TRO, he would have been transferred
21 despite his request for an accommodation. The allegations are enough to survive a Rule 12(b)(6)
22 motion to dismiss.
23

Finally, plaintiff alleges that there was a specific accommodation available, namely remaining in this judicial district so that he could continue to meet face-to-face with his attorney. Defendants challenge the reasonableness of this accommodation, but plaintiff's allegations are sufficient at this stage of the proceedings.

Defendants' motion to dismiss plaintiff's Rehabilitation Act claim should be denied.

C. **Plaintiff's Administrative Procedures Act Claim Should be Dismissed**

Plaintiff claims that defendants violated his rights under the APA when they attempted to transfer him away from his chosen counsel. Dkt. 14 at ¶¶ 33-36. "Under the APA, agency action is subject to judicial review only when it is either: (1) made reviewable by statute; or (2) a 'final' action 'for which there is *no other adequate remedy* in a court.'" *Cabaccang v. USCIS*, 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704) (emphasis added). Defendants argue, among other things, that plaintiff cannot maintain an APA claim because he has an adequate remedy under the Rehabilitation Act. Dkt. 21 at 5-6; Dkt. 26 at 4-5. Plaintiff did not address this argument in his response. *See generally* Dkt. 25.

The Court agrees with defendants. As discussed above, plaintiff has stated a claim under the Rehabilitation Act. If he prevails on this claim, he may be entitled to an injunction prohibiting his transfer away from his attorney. This is the same remedy he seeks through his APA claim. Thus, the Court may not review the propriety of the transfer order under the APA. *See, e.g.*, *Am. Disabled for Attendant Programs Today v. U.S. Dep't of Housing & Urban Dev.*, 170 F.3d 381, 390 (3d Cir. 1999) (affirming dismissal of APA claim where plaintiffs could bring Rehabilitation Act claim); *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 52 (D.D.C. 2009) (court did not have subject matter jurisdiction over APA claim where plaintiff could bring a claim under the Rehabilitation Act); *West v. Jackson*, 538 F. Supp. 2d 12, 21 (D.D.C. 2008)

REPORT AND RECOMMENDATION - 9

(same); *Walton v. U.S. Marshals Serv.*, No. C03-1460, 2003 WL 23875599, at *3 (N.D. Cal. Aug. 12, 2003) (same).

Defendants' motion to dismiss plaintiff's APA claim should be granted.

D.   Plaintiff's Due Process Clause Claim Should Not be Dismissed

Plaintiff claims that transferring him to a detention facility away from his attorney will prevent him from obtaining a full and fair hearing in his removal proceedings, as guaranteed by the Due Process Clause. Dkt. 14 at ¶¶ 43-45. The Fifth Amendment guarantees due process in removal proceedings. *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). A non-citizen who faces removal "is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Id.*; *see also* 8 U.S.C. § 1229a(b)(4)(B) (in removal proceedings, non-citizen "shall have a reasonable opportunity to examine the evidence against the [non-citizen], to present evidence on the [non-citizen's] own behalf, and to cross-examine witnesses presented by the Government . . ."). As noted above, a non-citizen also has the privilege of being represented by the counsel of his choice, at no expense to the government. 8 U.S.C. § 1362; 8 U.S.C. § 1229a(b)(4)(A) ("the [non-citizen] shall have the privilege of being represented, at no expense to the Government, by counsel of the [non-citizen's] choosing who is authorized to practice in such proceedings . . .").

Defendants argue that plaintiff's due process claim must be dismissed because (1) the Court does not have jurisdiction to review the government's decision regarding where to house plaintiff; (2) plaintiff's claim is not ripe; (3) transfer from one detention facility to another does not constitute a due process violation; (4) plaintiff has a claim under the Rehabilitation Act and therefore the Court should not decide the constitutional issue unnecessarily. As discussed below, defendants' motion to dismiss plaintiff's due process claim should be denied.

REPORT AND RECOMMENDATION - 10

1.  *Jurisdiction to Review Housing Decisions*

Title 8 U.S.C. § 1252(a)(2)(B)(ii) states that no court shall have jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." Under 8 U.S.C. § 1231(g)(1), "The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." Defendants argue that the decision of where to detain plaintiff is discretionary and therefore beyond the Court's jurisdiction. Dkt. 21 at 6-7.

Plaintiff, however, alleges that the decision to transfer him away from his attorney violates his constitutional rights. The Ninth Circuit has held, "[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) (holding that § 1252(a)(2)(B)(ii) did not preclude district court from considering Fifth Amendment due process claim); *see also Abdur-Rahman v. Napolitano*, 814 F. Supp. 2d 1087, 1095 (W.D. Wash. 2010) (rejecting argument that § 1252(a)(2)(B)(ii) precludes jurisdiction over due process claim); *Patel v. Scialabba*, No. 17-860, 2017 WL 5665659, at *3 (N.D. Cal Nov. 27, 2017) (denying motion to dismiss constitutional claims pursuant to § 1252(a)(2)(B)(ii)). Thus, § 1252(a)(2)(B)(ii) does not bar plaintiff's due process claim.

2.  *Ripeness*

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). It is "designed to separate matters that are premature for review because the injury is speculative and may never

occur from those cases that are appropriate for federal court action." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal quotation marks and citation omitted). "Ripeness has both constitutional and prudential components." *Id.* at 1058. To satisfy the constitutional requirement, there must exist a case or controversy, with issues that are "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (internal quotation marks omitted) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). To evaluate prudential ripeness, courts weigh two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Wolfson*, 606 F.3d at 1060. "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship . . . ." *Id.* (internal quotation marks and citation omitted).

Defendants argue that plaintiff's due process claim is not ripe because it is based on transferring him in the future and then holding an unfair removal hearing. Dkt. 21 at 7. Defendants contend that numerous circumstances could arise before the hearing that would alter plaintiff's needs; for example, he could choose new counsel or his medical condition could change. *Id.* According to defendants, plaintiff's request that the Court enjoin the government from transferring him at any time, for any reason, is broad and vague, which highlights that his claim is not ripe. *Id.* at 8.

Plaintiff responds that his due process claim is ripe because he received written notice of his transfer and was informed that he would be transferred even after his attorney requested an accommodation under the Rehabilitation Act. Dkt. 25 at 19. Plaintiff contends that the Court

REPORT AND RECOMMENDATION - 12

would not render an advisory opinion and that he only sought judicial relief after exhausting all other available options to ensure that he would remain in this district. *Id.* Defendants did not address plaintiff's arguments in their reply. *See* Dkt. 26 at 7.

Neither party provides a thorough discussion of this issue, but the Court concludes that plaintiff's allegations, when viewed in his favor, are sufficient to establish ripeness. Plaintiff alleges that he requires regular, in-person contact with his attorney to prepare for and participate in his ongoing immigration proceedings. He also alleges that defendants had concrete plans to transfer him away from his attorney, which would deny him his constitutional rights. Although plaintiff brought this claim before he went through a merits hearing in his removal case without the assistance of his attorney, he raises issues that are definite and concrete, namely that continued access to his attorney is necessary to avoid due process violations during his merits hearing. Plaintiff's allegations are also sufficient to establish prudential ripeness; there are specific factual allegations in his complaint, defendants' written transfer notice may be construed as a final action, and he claims that allowing his transfer would result in direct and immediate hardship. Accordingly, plaintiff's due process claim should not be dismissed based on ripeness.

       3.     *Transfer as a Deprivation of Due Process*

Defendants argue that plaintiff fails to state a due process claim, citing a single unpublished decision, *Marlon v. Department of Homeland Security*, 2017 U.S. Dist. LEXIS 62643 (D. Ariz. Apr. 24, 2017). Dkt. 21 at 7. In *Marlon*, a *pro se* prisoner alleged that his transfer to different facilities violated his constitutional rights. *Marlon*, 2017 U.S. Dist. LEXIS 62643 at *6. The court found that the plaintiff failed to state a claim because "transfer from one prison facility to another does not in itself constitute a deprivation of liberty protected by the Due Process Clause." *Marlon*, 2017 U.S. Dist. LEXIS 62643 at *6 (citing *Meachum v. Fano*, 427

REPORT AND RECOMMENDATION - 13

U.S. 215, 224-25 (1976) (holding that the Due Process Clause does not entitle a state prisoner to a hearing when he is transferred to a prison where the conditions are substantially less favorable)).  Both *Marlon* and *Meachum* are distinguishable because plaintiff here does not complain merely about the fact of his transfer.  He challenges his transfer because he has a disability that allegedly necessitates in-person meetings with his attorney, who would not be able to effectively represent him in his removal proceedings if he is transferred.  Plaintiff's allegations are sufficient to survive defendants' Rule 12(b)(6) motion to dismiss.

    4.    *Consideration of Constitutional Issue*

Finally, defendants argue that the Court should not adjudicate plaintiff's due process claim because it can address his concerns through his Rehabilitation Act claim.  Dkt. 21 at 8.  There is no dispute that the Court must avoid reaching constitutional questions in advance of the necessity of deciding them.  *Id.* (citing *Rosenberg v. Fleuti*, 374 U.S. 449, 451 (1963)); Dkt. 25 at 20.  Defendants, however, do not cite a single case where the court disposed of a constitutional claim on these grounds at the motion to dismiss stage.  Thus, as plaintiff argues, dismissal of his due process claim is premature.

IV.    <u>CONCLUSION</u>

The Court recommends that defendants' motion to dismiss, Dkt. 21, be GRANTED in part and DENIED in part.  Plaintiff's APA claim should be DISMISSED, but he should be allowed to proceed on his Rehabilitation Act and Due Process claims.  After ruling on this Report and Recommendation, this matter should be RE-REFERRED to the undersigned for further proceedings.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 7, 2018**.  Failure to file objections

within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 9, 2018.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 17th day of January, 2018.

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 15